IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TREVOR HARDAWAY,
    Plaintiffs,
Vs.

DEKALB COUNTY, JEFFREY L. MANN, SHERIFF, THOMAS E. BROWN, SHERIFF, DESHAY DICKERSON, as a Deputy Sheriff with DeKalb County, in his official and individual capacities and CHARLES DIX, as Deputy Sheriff with DeKalb County, in his official and individual capacities,
    Defendants.

CIVIL ACTION FILE NO:
1:15-CV-2806-ELR

## PLAINTIFF'S RESPONSES IN OPPOSITION TO DEFENDANTS

## MOTION FOR SUMMARY JUDGEMENT

Comes now Plaintiff in the above styled action, Trevor Hardaway and files his responses to the defendants' motion for summary and shows the court as follows:

## STATEMENT OF CASE

The Plaintiff filed his complaint against these defendants in the Superior Court of DeKalb County Superior Court. In the complaint, alleged that the defendants caused him to be maliciously prosecuted without probable cause when they arrested him on January 1, 2013, and made false statements to obtain a warrant and they maintained a malicious prosecution which terminated in his favor when a jury

1

returned a not guilty verdict on all nine charges. During the arrest the defendant officers used excessive force breaking the defendants jaw in multiple places.

The defendant removed these actions from the Superior Court of DeKalb County to this court and filed a timely answer.

## STATEMENT OF FACTS

On January 1 2013, the plaintiff and his friend, Kristen Calhoun. Had celebrated the incoming year at a friend's house. Sometime after midnight the plaintiff and Ms. Calhoun left the celebration and headed home. They both had drinks at the celebration, and the plaintiff felt safer driving than letting Kristen drive. Once he began to drive he noticed the fuel warning light was on. He knew this meant they needed fuel. Shortly after they left the party they started arguing about the plaintiffs driving and other issues. The plaintiffs pull in at the QT at pump 12 to get fuel. They were still arguing when they reached the station. Once the plaintiff stopped the vehicle, Kristin announced that she was going to walk the rest of the way home. **(Kristin's trail transcript from plaintiff's criminal trial @ Page 10@lines 2-16.)** The plaintiff reached around Kristin's waist and grabbed the door handle to keep Kristin from getting out.

He held onto the handle while Kristin pulled and wiggled to get the door open. As Kristin raised up with the plaintiffs arm around her waist, she told the plaintiff "here come the police".. The plaintiff released the door handle and sat up, where he to saw two officers coming towards their car. **(Plaintiff Aff., @_13)** (**Calhoun trail transcript @ page 10@ lines 4-5**) The Defendant Officers appeared at the car that was parked right up against pump twelve (12). One of the officer went to Kristin's window and one appeared at the Plaintiff's window. The officer nearest the Plaintiff's window, knocked on the window and motioned for the Plaintiff to roll the window down. Plaintiff rolled the window down and asked the officer "What's the problem?" The officer then asked for his drivers licenses. Plaintiff told the officer his license was in his back pocket. The officer then ordered him to get out of the car. **(Plaintiff Aff @ 18)**. When the plaintiff began to comply with the officer's order to get out the cars, the officer was so close to the plaintiff's door, until the door bumped the officer when he tried to open the door. The officer backed off the door just enough for the plaintiff to exit the car. When the plaintiff finally stepped out the car, the officers were standing right in front of him. As the Plaintiff was reaching in his pocket for his license, he snapped, "**police are always messing with people** ". The officer closets to him said, "**You are a**

**smart ass**". He then grabbed the plaintiff and slammed him into the concrete striking his head and face. (**Plaintiff Aff.,@ 20).** Neither of the officers had told the plaintiff why they were at their car, nor did either of them tell the plaintiff he was under arrest. (**Plaintiff Aff.,@ 23**). Once the plaintiff was on the ground, both of the defendant officers were on him pulling his arms behind him and handcuffs him. The plaintiff then felt severe pain in his face and head. His mouth filled with blood. While the plaintiff was bleeding on the ground, he heard one of the officers talking to Kristin, that's when he called out to , to tell the officers that he had not done anything to her. (**Kristin Trail Transcript @ 24).**

While the plaintiff sat on the ground bleeding, one of the police officers took pictures of the bleeding plaintiff. Sometime later, the EMS came to check on the plaintiffs' injuries. They wiped the blood from his face and he was put into the officers' car and taken to the DeKalb County Jail. (**Plaintiffs Aff., @26).**

While the plaintiff was in the patrol car, he complained to the officer about the pain he was having, and the officer reported, "you are a big boy, you can stand it". He was taken and booked into jail. His pain got worse as time passed. He complained to the jailors and finally they took him to Grady Hospital. (**Plaintiff Aff., @ 27).**

When the plaintiff was examined at Grady he learned that his jaw was broken in three places. (**See exhibit (A) Grady Medical Records**). On January 4, 2013 the plaintiff was discharged from Grady to DeKalb County Jail.

Plaintiff learned after he returned to DeKalb County Jail, that the defendant officers had charged him with nine criminal offenses.

### I. B. PLAINTIFF FEDERAL MALICIOUS PROSECUTION CLAIM IS A VALID CLAIM AND THESEDEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

**A. warrantless arrest without probable cause violate the constitution and provides a basis for a section 1983 claim Marx v. Gumbinner, 905 F. 2d 1503, 1505 (11th cir. 1990) probable cause to arrest exists when an arrest is objectively reasonable based on the totally of circumstances. <u>Rankin v.Evans,</u>**

<u>**133,F. 3d 1425, 1435,(11th Cir. 1998)**</u> **.** The Plaintiff agrees with the Defendants that Qualified Immunity offer complete protection for government officials in their individual capacities (if) their conduct does not violate clearly

establish statutory or constitutional rights of which a reasonable person would have known. Vinyard v. Wilson, 311 F.3d 1340, 1346(11th Cir. 2002)

Under the two-part analysis used in this Circuit, the defendant first must prove that allegedly unconstitutional conduct occurred while the official was acting within the scope of his or her discretionary authority. Harris, 433 F. 3d at 811. Here, the parties agree that at all times relevant to Plaintiff's lawsuit, all acts performed by defendants were done in their official capacity as DeKalb County police officers. Defendants clearly were acting within the scope of their discretionary authority as police officers OF DeKalb County when they approached the plaintiff at pump 12 at the QT gas station.

Once the defendant shows that he acted within his discretionary authority, the burden shifts to the plaintiff to demonstrate that (1) the defendant's conduct violated the plaintiff's constitutional right and (2) that the constitutional right violated was "clearly established". Cooper v. Dillon, 403 F.3d 1208, 1220 (11th Cir. 2005). If the plaintiff fails to make either of those showings, the defendant is entitled to qualified immunity. Smith v. Siegelman, 322 F. 3d q1290, 1295 (11th Cir. 2003) ("Without a constitutional violation, there can be no violation of a clearly established right".)

"For a constructional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right". Magluta v. Samples, 375 F. 3d 1269, 1283 (11th Cir. 2004).

For a right to be clearly established, the specific action need not previously been found unlawful; however the unlawfulness must have been apparent "in the light of pre-existing law. Id. In determining whether the unlawfulness of the act was apparent, the court must ask "whether the state of law at the time of the violation gave the [defendant] fair warning that [his] alleged actions were unconstitutional" Id.

The Eleventh Circuit has explained that a defendant may have received "fair warning" in one of three ways. Vinyard v. Wilson, 311 f. 3d 1340, 1350 (11 Cir. 2002). "First the words of the pertinent federal statute or federal constitutional provision in some cases may be specific enough to establish clearly the law applicable to particular conduct and circumstances and to overcome qualified

4

immunity even in the total absence of case law". Id. (emphasis in original). "For example, the words of the federal statute or federal constitutional provision may be so clear and the conduct so bad the case law is not needed to establish that the conduct cannot be lawful". Id. This exception however is a narrow one and applies "only when the conduct is so egregious that the government actor must be aware that he is action illegally". Thomas v. Roberts, 323 F. 3d 950, 955. (11th Cir. 2003).

Second, if the conduct is not efficiently egregious to violate a statue or constitutional provision on its face, the Court must turn to case law to determine whether "fair warning" exists. Vinyard 311 F. 3d at 1351.

Third if no case law exists with a broad holding that is not tied to particularized facts, the Court must examine cases from the Supreme Court, the Eleventh Circuit, or highest court of the state in which the case originated to determine whether "fair warning" existed under the circumstances of the case. Vinyard, 311 F. 3d at 1351. "When fact-specific precedents are said to have established the law, a case that is fairly distinguishable from the circumstances facing a government official cannot clearly establish the law for the circumstances facing that government official." Id. 1352. If however, "the circumstances facing a government official are not fairly distinguishable, that is, are materially similar, the precedent can clearly establish the applicable law." Id. With respect of this type of fair warning, "a very high degree of prior factual particularity may be necessary." Id 1353 (quoting Hope v. Pelzer, 536 U.S. 730, 741 (2002).

The Defendants filed Defendants Dix and Dickerson's Affidavit to support their position that these Defendants are entitled Qualified Immunity. The plaintiff shows the Court that neither of the defendants' Affidavits mention that (1) the plaintiff had committed a crime prior to his arrest (2) that they had informed the plaintiff that he was under arrest and (3) that Ms. Calhoun told them that the plaintiff had done anything to her, less more committed a crime against her. (**See Defendant Exhibits 1 &2 Defendants' Affidavits**) These defendants knew when they serve an Affidavit for a warrant for (1) Family Violence and Battery that they did not have arguable probable cause to swear out a warrant for Family Violence and Battery for the plaintiff.  The defendants also knew that when they swore before the Magistrate Court for an arrest warrant for Public Drunkenness, the plaintiff had not been drinking or drunk in a public place; the only time the plaintiff was in a public place was with the officers, was when the OFFICERS

5

ordered him out of the vehicle. (**See Defendants Exhibits 1&**2 **Defendants' Affidavits)** The plaintiff further shows the Court that neither Defendants Exhibits **1 or 2** mention that they told the plaintiff that he was under arrest at any time. The defendants based their probable cause to arrest the plaintiff and charge him with multiple charges on "**officer observed subject with victim in chokehold**". The plaintiff dispute the defendants use of him choking Ms. Calhoun as probable cause to arrest him. (See Calhoun trial Transcript at 29:7-14). Plaintiff also disputes the defendants' statements in their official reports and their sworn Affidavit before the Magistrate, that the choking of Ms. Calhoun gave them probable cause to seek an arrest warrant for The Plaintiff's arrest.

The facts presented by the plaintiff disputes the facts presented by the defendants and at the Summary Judgment Stage, the Court is required to take the statements of the plaintiff as true. Plaintiff contends that he has created a juror question and these defendants are not entitled to Qualified Immunity. See <u>Rowe v. City of Fort Lauderdale,</u> 279 F. 3d 1271, 1279 (11th Cir. 2002) Stating that a Court must accept the nun-mover's version of disputed facts and allow the case to be heard by a jury.

The gravamen of complaint [for malicious prosecution] is the absence of probable cause on the part of the person instituting the prosecution, probable cause is **"when the circumstances are such as to satisfy a reasonable (person)that the accuser had no other grounds for proceeding but his desire to injure the accused" O.C.G.A 51-7-43.** Here the determination is dependent upon whether the facts as they appeared at the time of instituting the prosecution were such as to lead a person of ordinary caution to entertain a belief that the accused was guilty of the offense charged. The plaintiff contend that these Defendants had not even arguable probable cause that the plaintiffs were guilty of Family Violence/Battery when they arrested him. Neither of them received any information from Ms. Calhoun that he had battered her. They took a statement from Ms. Calhoun after they had used excessive force against him and that statement did not tell them that the Plaintiff had committed any crime against her.(**See Plaintiff Exhibit 2 Ms. Calhoun's statement given at the scene after the Defendants had arrested the Plaintiff)**  Plaintiff contends that he has presented a jury issue on his claim of malicious prosecution under **O.C.G.A. \*51-740 See**

**Garner v. Heilig-Meyers Furniture Co., 240 Ga. App. 780 and Wilson v. Bonner, 166 Ga. App. 9, 11-12).**

Plaintiff believes that when the defendant responded to the statement "**police always messing with people**" in saying "**You are a smart ass**" and then slams him to the ground, without probable, malice can be enferred from the total lack of probable cause. Plaintiff contends that he has presented sufficient disputed facts that prevents this case from being decided at the Summary Judgment stage and defendants' motion as to Court I. should be denied.

II  **PLAINTIFF'S STATE LAW CLAIMS AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES DO NOT FAIL BECAUSE THE DEFENDANTS ARE NOT ENTITLED TO OFFICIAL IMMUNITY**

**1. INTENTUAL INFLICTION OF EMOTIONAL DISTRESS.**

A claim for intentional infliction of emotional distress has four elements: (1) the conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress and (4) the emotional distress was severe. **Thimble v. Circuit City Stores**, 220 Ga. App. 498, 499 (469 SE2d 776) (1996). "The mere termination of employment does not authorize a recovery for intentional infliction of emotional distress. [Cit.] In order to sustain a cause of action, the defendant's action must have been so terrifying as naturally to humiliate, embarrass or frighten the plaintiff [Cit.]" **Kitfield v, Henderson**, black & Greene, 231 Ga. App. 130, 135 (6) (498 SE2d 537) (1998). A claim for intentional infliction of emotional distress will not succeed where the defendant uttered "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. [Cit.]" Jenkins v. General hospitals of Humana, 196 Ga. App. 150, 152 (395 SE2d 396) (1990).

In the intent case the evidence shows, that the defendant officers approached the plaintiffs vehicle on January 1, 2013 at the QT Gas Station located at 3880 North Decatur Road in DeKalb County, according to the defendants incident report, the plaintiff had one arm around a black females head and the other arm around her neck. His report state that the female appeared to be unconscious. Defendant Dix presented himself at the driver's side and knocked on the window. Defendant Dix requested the plaintiffs' driver's license and the plaintiff informed the officer that

it was in his back pocket. He was then ordered to exit the car. (Dix affidavit, Defendant exhibit 1). When the plaintiff exited the car the officers were standing within two feet of him, when he first attempted to exit the car, the door bumped one of the officers. The officer moved back just enough for the door to open and the plaintiff could get out. Once the plaintiff gets out of the car he stated "**Police always messing with people**". The officer closets to him replies "**you are a smart ass",** and grabbed him and slammed him into the concrete smashing his head and face into the concrete breaking his jaw in three places. (Plaintiffs Aff., 20). To cover up their use of force the defendants then arrested the plaintiff and charged him with nine criminal offenses. They then swore falsely to the Magistrate to obtain arrest warrants for his arrest, gave false information to the prosecutor causing him to be maliciously prosecuted.

The plaintiffs' broken jaw had to be wire to repair the breaks. The plaintiff suffered emotional fear for months about whether his jaw will ever be the same.

The plaintiff shows that:

(1) The defendants conduct of slamming him into the concrete, breaking his jaw in three places was intentional and reckless and without probable cause.
(2) Their conduct was extreme and outrageous, because he had not been charged with any crime and he did not resist them nor did they charged him with resisting arrest.
(3) That there was a casual causation between the wrongful act (slamming him to the ground and breaking his jaw) and the emotional distress.
(4) The emotional distress was severe.
He suffered while he was in jail that he would get infected in his mouth, which would make his circumstances worst. He was not given the prescribed diet and he had to make due to lessen his pain. He was afraid to complain about the jail officers not giving him soft diet; that they would withhold all of his prescribed food.

The plaintiff contends that the conduct of these defendants was so outrageous and so extreme and to go beyond all possible grounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. See Conziani v. Visiting Health Nurse Systems, Inc., 271 Ga. App. 677, 679 (2005).

The defendants' motion to be denied as to intentional and inflection of emotional distress.

## II MALICIOUS PROSECUTION

O.C.G.A. 51-7-48 " A criminal prosecution which is carried on maliciously and without any probable cause and which carries damage to the person prosecuted should give him a cause of action'".

O.C.G.A J1-7-43 "Lack of probable cause shall exist when the circumstances are such as to satisfy a reasonable man that the accuser had no grounds for proceeding but his desire to injure the accused".

Malice may be inferred from a total lack of probable cause existence of probable cause is a jury question where the facts regarding probable cause are disputed and a question of law for the court when the relevant facts are under pathed O.C.G.A 51-7-4. In the instance crisis the facts are greatly disputed. The Plaintiff and Ms. Calhoun dispute that the plaintiff was choking her. The plaintiff denies that he walked up on the officer and pulled his hands away from them, because they never attempted to put handcuffs on him before he was slammed to the ground. (Plaintiffs Aff., 20). Then defendants claim that they had probable cause to arrest the plaintiff, because **officers observed plaintiff with victim (**Ms. **Calhoun) in a choke hold**. The plaintiff and the alleged victim denied that the plaintiff was choking her. There is a question of fact that remains as to whether the defendants had even arguable probable cause to charge and prosecute the Plaintiff with **Battery Violence Family** stating that "accused did intentionally caused visible body harm to Kristin Calhoun by putting his arm around her neck and head choking her until she almost passed out. (**See defendant Exhibit B defendant Dickerson Affidavit for an arrest warrant for Family violence Battery.)**

**These Defendants had absolute zero evidence that the Plaintiff caused visible body harm to Ms. Calhoun. These Defendants knowingly gave false information in their sworn affidavit for an arrest warrant for the Plaintiff.**

 **(See Wal-Mart store v. Johnson 249 Ga. App. 84 (2001)**. (Finding questions of facts concerning both false arrest and malicious prosecution.)

## Conclusion

Plaintiff contest that he has presented evidence that creates a jury+ -* question in all of the defendants' counts and their motion should be denied and all issues tried by a jury.

                                  Respectfully submitted

                                  C. Victor Long
                                  State Bar #456950
                                  For the Plaintiff

P.O. Box 310928
Atlanta, GA 30331
Tel:  (404) 349 – 4303
Fax: (404) 399-6866
attjud@bellsouth.net