# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

| | | |
|---|---|---|
| TREVOR HARDAWAY, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | 1:15-CV-02806-ELR |
| | * | |
| DESHAY DICKERSON and CHARLES DIX, in their individual capacities, | * | |
| | * | |
| Defendants. | * | |

# ORDER

This matter comes before the Court on Defendants' Motion for Summary Judgment [Doc. 31]. For the reasons stated herein, the Court grants the Motion.

## I.  Background

Plaintiff Trevor Hardaway brings this civil rights action against Defendants Sergeant DeShay Dickerson and Deputy Charles Dix alleging a federal malicious prosecution claim pursuant to 42 U.S.C. § 1983, as well as two state law claims for intentional infliction of emotional distress and malicious prosecution pursuant to O.C.G.A. § 51-7-40.

A.     **Factual Background**

All of Plaintiff's claims arise out of an incident occurring in the early hours of January 1, 2013. On December 31, 2012, Plaintiff and his then-girlfriend, Kristin Calhoun, attended a New Year's Eve party. At some point after midnight, Plaintiff and Ms. Calhoun left the party. Both Plaintiff and Ms. Calhoun had been drinking, and Plaintiff decided to drive them home in Ms. Calhoun's car. According to Ms. Calhoun, the two left the party to get gas for her car and Plaintiff was driving erratically, causing an argument between the two.[1]

According to Ms. Calhoun, upon arrival at the gas station, Plaintiff "mushed" her head into the window; the two continued to argue; Ms. Calhoun attempted to get out of the car; and Plaintiff grabbed her around her waist and held her in the car. [Doc. 39-5 at 9:23–10:6]. Ms. Calhoun testified that Plaintiff released her after she indicated that police were coming up to the vehicle. While she was trying to escape Plaintiff's grasp, Ms. Calhoun states that Plaintiff's arms came around her neck.

Plaintiff disputes Ms. Calhoun's characterization of what happened at the gas station. Although Plaintiff agrees that the two were arguing and Ms. Calhoun wished to exit the vehicle and walk home, Plaintiff states that he simply reached around her waist and grabbed the door handle so she could not get out. As Plaintiff

---

[1] Ms. Calhoun's recollection of the evening's events comes from her testimony at Plaintiff's criminal trial in DeKalb County State Court.

held the door, he alleges that Ms. Calhoun pushed against him trying to open it, and at that time she said, "The police are coming, you going [sic] to jail!" [Doc. 39-1].

The police officers that Ms. Calhoun saw then approached Plaintiff and Ms. Calhoun, who were both still in the vehicle. Sergeant Dickerson initially went to the passenger side of the vehicle to check on Ms. Calhoun, while Deputy Dix approached the driver side of the vehicle.[2]

According to Plaintiff, Deputy Dix tapped on the window and signaled for Plaintiff to roll down the window. Plaintiff asked, "What's the matter?" but received no response to the question. [Doc. 39-1 at ¶¶ 15–16]. Instead, Plaintiff alleges that Deputy Dix requested Plaintiff's driver's license. Plaintiff then attempted to get out of the vehicle so he could retrieve the license from his back pocket, but was ordered to stay in the car. By this point, Sergeant Dickerson moved toward the driver's side of the vehicle. Plaintiff was then permitted to exit the vehicle to retrieve his license. Plaintiff alleges that he said, "Police always messing with people," and Sergeant Dickerson responded, "You are a smart ass," grabbed Plaintiff, and slammed him onto the concrete. [Id. at ¶ 20]. Once on the ground, Plaintiff states that both officers were on top of him. Plaintiff claims that he suffered severe injuries from the altercation.

---

[2] Plaintiff refers to the officers without identifying them by name. The Court relies on the officers' affidavits for identification purposes.

Sergeant Dickerson's version of events differs from Plaintiff's version. According to Sergeant Dickerson, while at the gas station, he witnessed Plaintiff choking Ms. Calhoun inside a vehicle. After approaching the vehicle, and upon Deputy Dix's request for Plaintiff's identification, Plaintiff got agitated and Sergeant Dickerson noticed blood coming from Plaintiff's mouth. Sergeant Dickerson states that he smelled a strong odor of alcohol coming from Plaintiff and Plaintiff began to approach him using vulgar and obscene language. Despite instructions to step back, Plaintiff refused, and Sergeant Dickerson attempted to place Plaintiff in handcuffs, but Plaintiff "snatched away." [Doc. 31-3 at ¶ 14]. Deputy Dix then attempted to grab Plaintiff by his shirt sleeve, but Plaintiff pulled away. Plaintiff and Sergeant Dickerson then fell to the ground where Sergeant Dickerson was able to place Plaintiff in handcuffs.[3] Deputy Dix's recollection of the events is largely similar to that of Sergeant Dickerson. He adds that Ms. Calhoun appeared unconscious upon their arrival.

---

[3] Plaintiff's response to Defendants' statement of material facts denies the allegations pertaining to the attempts to handcuff Plaintiff. In support of his denial, Plaintiff cites to his own affidavit, specifically paragraph 23. However, Plaintiff's affidavit does not contain a paragraph 23, as that page is apparently missing from the affidavit. This Court's Local Rules require a respondent on summary judgment to directly refute the movant's facts with concise responses supported by specific citations to the evidence; otherwise, the Court deems the movant's facts admitted. LR 56.1(B)(2)(a)(2), NDGa. Because Plaintiff has not actually cited the Court to any evidence contradicting Defendants' statement of material facts, the Court deems these facts admitted.

Emergency Medical Services ("EMS") was then dispatched to treat Plaintiff for his injuries, but Plaintiff refused treatment.[4] While waiting for EMS, Ms. Calhoun provided a written statement, wherein she stated that she was arguing with Plaintiff because she wanted to leave him, Plaintiff got upset and said she was not going anywhere, and when the officers arrived they saw Plaintiff's arms around her neck.

The officers arrested Plaintiff for Family Violence Battery, Obstruction of an Officer, and Public Drunkenness. The officers then transported Plaintiff to the DeKalb County Jail. Later the same day, Sergeant Dickerson obtained criminal arrest warrants from the Magistrate Court of DeKalb County for the charges. After a jury trial, Plaintiff was found not guilty on all charges.

**B.    Procedural History**

Plaintiff initially filed this action in the Superior Court of DeKalb County on July 7, 2015, against DeKalb County, Sheriff Jeffrey L. Mann, Sheriff Thomas E. Brown, Sergeant DeShay Dickerson, and Deputy Charles Dix. Defendants removed the matter to this Court on August 10, 2015.

On August 17, 2015, Defendants moved to dismiss Plaintiff's complaint. The Court granted in part and denied in part the motion to dismiss. Specifically, the Court dismissed all claims against DeKalb County and dismissed all claims

---

[4] Plaintiff does not address Defendants' statement that Plaintiff refused treatment. Accordingly, it is deemed admitted. LR 56.1(B)(2)(a)(2), NDGa.

against Defendants in their official capacities. Plaintiff's complaint specifically indicated that he brought claims against Defendants Dix and Dickerson in their individual capacities as well; however, it was unclear whether Plaintiff intended to assert individual capacity claims against Defendants Brown and Mann. Accordingly, the Court directed Plaintiff to file an amended complaint if he intended to assert individual capacity claims against Defendants Brown and Mann. Plaintiff did not file an amended complaint. Accordingly, following Defendants' motion to dismiss, the only claims remaining were those against Defendants Dix and Dickerson in their individual capacities.

Defendants Dix and Dickerson thereafter moved for summary judgment, which is now ripe for the Court's consideration.[5]

## II.   Legal Standard

A party is entitled to summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In this context, "materiality" is determined by the applicable

---

[5] The Court notes a number of deficiencies with Plaintiff's response to Defendants' motion for summary judgment. First, the brief in opposition to Defendants' motion fails to comply with Local Rule 5.1. The brief is single spaced, partially in a Times New Roman font smaller than size 14 point, and randomly switches to a different font of unknown type and size. Further, Plaintiff failed to include the certification that the brief was prepared in accordance with the Local Rules. Finally, and most egregiously, Plaintiff's brief is riddled with typographical and grammatical errors. Simply put, Plaintiff's brief in response does not rise to the level expected by officers of this Court. Although the Court could refuse to consider Plaintiff's response brief based on these violations of the Local Rules, the Court will nevertheless review the substance of Plaintiff's briefs and filings. In the future, Plaintiff's counsel should carefully review the Local Rules and proofread his filings.

substantive law; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Further, the Court must view the facts in the light most favorable to the party opposing the motion and must draw all reasonable inferences in that party's favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

The party requesting summary judgment bears the initial burden of showing the Court, by reference to the record, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the non-movant has the burden of proof at trial, as is the case here, the movant can support its motion by either: 1) showing the non-moving party has no evidence to support an essential element of its case; or 2) presenting "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." See Young v. City of Augusta, 59 F.3d 1160, 1170 (11th Cir. 1995) (citing Hammer v. Slater, 20 F.3d 1137, 1141 (11th Cir. 1970) (quoting U.S. v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991))). Notably, "it is never enough simply to state that the non-moving party cannot meet its burden at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). However, if the Court determines the movant has carried its initial burden, the non-movant must then "go beyond the

pleadings" and demonstrate that there is indeed a genuine issue of material fact for trial. Celotex, 477 U.S. at 324.

### III. Discussion

Defendants argue that they are entitled to summary judgment on all of Plaintiff's claims. Specifically, Defendants argue that they have qualified immunity for Plaintiff's § 1983 malicious prosecution claim; they have official immunity for Plaintiff's two state law claims; and, even if they do not have official immunity over the state law claims, the state law claims fail as a matter of law.

### A. Malicious Prosecution and Qualified Immunity

A claim for malicious prosecution arises under the Fourth Amendment, and has the following elements:

> To establish a § 1983 malicious prosecution claim, the plaintiff must prove two things: (1) the elements of the common law tort of malicious prosecution; and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures. As to the first prong, the constituent elements of the common law tort of malicious prosecution are: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused. . . .
>
> As to the second prong, it is well established that an arrest without probable cause is an unreasonable seizure that violates the Fourth Amendment. Consequently, the existence of probable cause defeats a § 1983 malicious prosecution claim.

Grider v. City of Auburn, Ala., 618 F.3d 1240, 1256 (11th Cir. 2010) (internal quotations and citations omitted).

> For probable cause to exist, an arrest must be objectively reasonable based on the totality of the circumstances. This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. Although probable cause requires more than suspicion, it does not require convincing proof, and need not reach the same standard of conclusiveness and probability as the facts necessary to support a conviction.

Wood v. Kesler, 323 F.3d 872, 878 (11th Cir. 2003) (internal quotations, citations, and alterations omitted).

In this case, Defendants assert that they are entitled to qualified immunity. Generally, government officials have qualified immunity "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Maughon v. Bibb County, 160 F.3d 658, 660 (11th Cir. 1998) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Importantly, qualified immunity provides "protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

> When asserting the affirmative defense of qualified immunity, an officer must first establish that he was engaged in a discretionary function when he performed the acts at issue in the plaintiff's complaint. If the officer satisfies his burden of proof to show that he was engaged in a discretionary function, the burden shifts to the

> plaintiff to show that the defendant is not entitled to qualified immunity. To do so, the plaintiff must prove that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation. If the plaintiff succeeds, the defendant may not obtain summary judgment on qualified-immunity grounds.

Kinzy v. Warren, 633 F. App'x 705, 706 (11th Cir. 2013) (internal citations omitted). The parties agree that Defendants were engaged in a discretionary function when they approached Plaintiff at the gas station and ultimately arrested him. Accordingly, the burden shifts to Plaintiff to show that Defendants violated a clearly established constitutional right. Plaintiff alleges that Defendants violated his constitutional rights by instituting and maintaining criminal prosecution in the absence of probable cause.

As stated above, the existence of probable cause defeats a claim for malicious prosecution. Grider, 618 F.3d at 1256. "To receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause." Brown v. City of Huntsville, Ala., 608 F.3d 724, 734 (11th Cir. 2010) (citing Holmes v. Kucynda, 321 F.3d 1069, 1079 (11th Cir. 2003)). Arguable probable cause exists where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004). "If reasonable public officials could differ on the

lawfulness of a defendant's actions, the defendant is entitled to qualified immunity." Storck v. City of Coral Springs, 354 F.3d 1307, 1314 (11th Cir. 2003).

The Court thus addresses whether Defendants had arguable probable cause to arrest Plaintiff on each of the three charges: (1) Family Violence Battery, (2) Obstruction of an Officer, and (3) Public Drunkenness.

A person commits a battery in Georgia where the person intentionally causes visible bodily harm to another. O.C.G.A. § 16-5-23.1(a). The offense of family violence battery is committed where a battery is committed between household members. Id. at § 16-5-23.1(f).[6] Taking the facts in the light most favorable to Plaintiff, the Court concludes that Defendants had arguable probable cause to believe that Plaintiff committed the offense of family violence battery. Plaintiff does not dispute that Defendants witnessed him engaged in a physical altercation with Ms. Calhoun. In fact, Plaintiff's own affidavit details a physical struggle wherein Plaintiff attempted to restrain Ms. Calhoun to keep her inside the vehicle. Thus, Plaintiff's disagreement with Defendants regarding whether he was choking Ms. Calhoun is immaterial, as family violence battery requires intentional bodily harm, not a particular type of battery, such as choking. Given that the officers witnessed a physical altercation between Plaintiff and Ms. Calhoun, the Court has no trouble concluding that the officers had arguable probable cause, if not actual

---

[6] Plaintiff does not dispute that he and Ms. Calhoun were "household members."

11

probable cause, to believe Plaintiff committed the offense of family violence battery. See Elmore v. Fulton Cty. Sch. Dis., 605 F. App'x 906, 912 (11th Cir. 2015) (finding arguable probable cause for simple battery despite conflicting witness statements).[7]

Plaintiff was also charged with obstruction of an officer, which occurs when a person knowingly and willfully obstructs or hinders a law enforcement officer in the lawful discharge of his or her official duties. O.C.G.A. § 16-10-24(a). Plaintiff does not respond to Defendants' argument that they had arguable probable cause to believe Plaintiff obstructed an officer. Even so, the undisputed facts reveal that Plaintiff made vulgar comments to the officers and resisted their instructions and attempts to restrain Plaintiff.[8] Accordingly, the officers had arguable probable cause to believe that Plaintiff committed obstruction of an officer.

Finally, the offense of public drunkenness occurs where a person appears in an intoxicated condition in any public place. O.C.G.A. § 16-11-41. Plaintiff's only argument regarding probable cause for the public drunkenness charge is that Plaintiff was not drunk in a public place because the only time he was in a public

---

[7] Furthermore, after the incident, Ms. Calhoun provided a written statement wherein she reported that Plaintiff had his arms around her neck. The officers were entitled to rely upon her statement to support probable cause. Rankin v. Evans, 133 F.3d 1425, 1441 (11th Cir. 1998) ("[A]n officer is entitled to rely on a victim's criminal complaint as support for probable cause.").

[8] As above, Plaintiff cites to a paragraph in his affidavit to refute Defendants' characterization of Plaintiff's actions, wherein he states that he simply said, "Police always messing with people." [Doc. 39-1 at ¶ 20]. Plaintiff's affidavit, however, does not directly refute whether Plaintiff used vulgar or offensive language toward the officers nor does he address Defendants' allegation that he resisted arrest or refused instructions to step back.

place was when the officers ordered him out of the vehicle. However, Plaintiff does not dispute that he had been drinking and that the gas station is located in a public place. Indeed, the officers both indicated that they could smell the odor of alcohol coming from Plaintiff's person, a fact which Plaintiff does not deny. Therefore, the officers clearly had arguable probable cause to believe Plaintiff committed the crime of public drunkenness.

Given that Defendants had arguable probable cause to believe Plaintiff committed each of the three offenses, the officers are entitled to qualified immunity and Plaintiff's § 1983 claim for malicious prosecution fails.

**B.     State Law Claims and Official Immunity**

Defendants argue that they are entitled to official immunity for Plaintiff's state law claims of intentional infliction of emotional distress and malicious prosecution. "Under Georgia law, county law enforcement officers are entitled to official immunity from suit and liability unless they 'negligently perform a ministerial act or act with actual malice or an intent to injure when performing a discretionary act.'" Speight v. Griggs, 579 F. App'x 757, 759 (11th Cir. 2014) (quoting Roper v. Greenway, 751 S.E.2d 351, 352 (Ga. 2013)). As above, the parties do not dispute that Defendants were engaged in discretionary acts at all times pertinent to this case. Accordingly, to survive summary judgment, Plaintiff

must present a question of fact regarding whether Defendants acted with actual malice or intent to injure.

"In the context of official immunity, 'actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact.'" Peterson v. Baker, 504 F.3d 1331, 1339 (11th Cir. 2007) (quoting Adams v. Hazelwood, 520 S.E.2d 896, 898 (Ga. 1999)). Stated differently, "malice in this context means badness, a true desire to do something wrong." Id. "In addition, 'actual intent to cause injury' means 'an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury.'" Id. (quoting Kidd v. Coates, 518 S.E.2d 124, 125 (Ga. 1999)).

Liberally construed, Plaintiff appears to argue that Defendants' actual malice and/or intent to injure is evidenced by one officer saying, "You are a smart ass," and slamming Plaintiff to the ground. [Doc. 39-1 at ¶ 20]. "'Evidence demonstrating frustration, irritation, and possibly even anger is not sufficient to penetrate official immunity,' nor is proof of ill will, unless the ill will is 'combined with the intent to do something wrongful or illegal.'" Selvy v. Morrison, 665 S.E.2d 401, 406 (Ga. Ct. App. 2008) (quoting Tittle v. Corso, 569 S.E.2d 873, 877 (Ga. Ct. App. 2002)). Here, even assuming one officer used profane language and slammed Plaintiff to the ground, the statements and actions would merely evidence anger or frustration and not a deliberate intent to commit a wrongful act. See

Buckley v. Futo, No. 1:09-cv-2869-RWS, 2011 WL 2532890, at *6 (N.D. Ga. June 24, 2011) (finding the officer entitled to official immunity where the plaintiff only alleged that the defendant "excessively cursed at her and used unreasonable force in arresting her"); Selvy, 665 S.E.2d at 406 (finding the officers were entitled to official immunity even where the officers used profanity, threatened to break down a door, and slammed a woman's face into a wall); Tittle, 569 S.E.2d at 877 (finding the officer entitled to official immunity where the officer the officer used profanity and threats and slammed an individual against the patrol car).

Accordingly, Defendants are entitled to official immunity for Plaintiff's two state law claims, and those claims fail.

### IV. Conclusion

For the reasons stated herein, the Court **GRANTS** Defendants' Motion for Summary Judgment. [Doc. 31]. The Court **DIRECTS** the Clerk to enter judgment in favor of Defendants and **CLOSE** this case.

**SO ORDERED**, this 29th day of June, 2017.

_____
Eleanor L. Ross
United States District Judge
Northern District of Georgia